.Judge Underwood
dissenting, delivered his own opinion as jollows:
The principal question in this cause, involves a doctrine calculated to operate extensively, and must have a serious influence upon the peace and good order of society. Differing in opinion with the other members of the court, I deem it .proper to assign the reasons for my dissent.
The many suits between these parties, and the members of their families, have grown out of a series of battles fought in contesting the possession of a few acres of ground recovered in an action of ejectment by J. S. Smith from Frame, and sold to S. Tribble, &e.
The facts, which will clearly present the point of. law, are briefly these. After Smith had recovered a writ of habere facias issued, and Tribble was put in *607 possession, Frame claimed compensation for his improvements under the occupant laws, and as-he had not been' paid, upon his motion, the writ of habere jaeAas was quashed, and a writ of restitution awarded him under which the sheriff put Frame in possession.
After Frame had been restored to the possession under the writ of restitution, and in the month of April, 1823, he..commenced cultivating the field which had been delivered to him by the sheriff. To prevent this fas is perfectly clear to my mind) Tribble, while Frame’s son had quit his plough and gone to breakfast, entered upon the lftnd with cart and oxen and commenced hauling off t he rails. Frame, learning this, went with his party, and bv forcibly throwing the rails out of the cart, attempted to prevent Tribble from carrying them off, and thus to render the field useless. Tribble, resolved on effecting his object, struck Frame, who instituted this action for the battery so committed.
The defendants in the circuit court, now plaintiffs in error, asked for this instruction, “ that the writ of possession and writ of restitution, and the sheriff’s returns thereon, (ad of which had heen read without exception) had nothing to do with the controversy, and that the jury roust entirely disregard them.” The court refused the instruction, and the Tribbles excepted. Whether this decision of the circuit court be right or wrong is the principal point for our determination.
If the writ of restitution, and the execution of it by the officer, and bis return of the fact, were calculated to shew that Frame was in the actual possession of the field ; and if such actual possession on his part, justified him in repelling the entry made by Tribble, and put Tribble in the wrong, so that he could not justify the battery upon Frame, then the court decided correctly in refusing to give the instruction. But if the law he, that Tribble, as proprietor in feé of the better title, had a right to enter upon the land, and having succeeded in making his entry did, ipso facto, divest Frame of his actual possession, and thereby become seized, in such a manner *608 as to authorize him to remove every thing upon the land, and to beat any one who might offer to resist him, then the instruction ought to have been given.
It is my opinion, that Frame, by the execution of the writ of possession, was placed in the same condition which he occupied he fore he was turned out by the habere facias. It is idle to restore a tenant under a writ of restitution, unless lie is thereafter to hold and enjoy all the rights which belonged to him before he was dispossessed A writ of restitution goes upon the ground, that the tenant was improperly dispossessed, and that it is right to restore him to all that he has been deprived of; and therefore it would he suicidal to contend, that the temporary dispossession placed the tenant in any worse condition after restoration, than that he occupied before his removal.
What was Frame’s situation upon the land ? He had entered upon it in virtue of a junior grant. He had improved it. A judgment, in an action of ejectment, had been rendered against him. He had not been paid for his improvements. He had entered upon and improved the land common to the tyvo patents with an intention to take possession of the whole land covered by his patent. He had been more than two years thus possessed. Smith, and those under whom he claimed, had never entered upon the lap prior to the judgment in the action of' ejectment so as to oust or divest Frame of his possession. Under these circumstances Frame had the actual possession, or possession in fact, of the land. The case of Carrine vs. Westerfield, III Marshall, 333, shews that the occasional use or enjoyment of a thing according to the purposes for which it was designed, amounts to a continued possession in fact, •where an unceasing intention exists soto continue in ,thc use of it. The court says, “ where there is an ; enclosure for the mere purpose of pasture, which can only be used at proper intervals, it never has been snpposed that the continuity of the owner’s possession was interrupted at the intervals in which liis cattle were not actually grazing within the enclosure.” The case of Chiles &c. vs. Stephens, III *609 Marshall, 347, shews that a possession in fact, or actual possession, may he held by a person not in fact on the land. See also Brumfield vs. Reynolds, IV Bibb, 388.
The foregoing cases do, to my mind, establish be* yond a doubt, that Frame was in the actual possession of the land upon which Tribble entered. Hits possession was acquired without fraud or violence and in perfect good faith, being invited to. take possession by a patent from the Commonwealth. The 12th section of the occupant act of 1812, prohibited his removal by a writ of possession, until after the return of the report of commissioners and a judgment thereon, or the execution of bonds in pursuance thereof. He was further protected in his possession by the provisions of the act of 1819 securing the growing crop, from which, in connection with the act of 1812, it is clear to my mind that the legislature designed that the occupant should, if he pleased, cultivate the land and enjoy its use, until the question of improvements was disposed of, and a writ of habere facias awarded. Moreover, it seems to me, that the act of 1810, prohibitingentries into land “ with any manner of force,” and declaring that all entries shall be deemed forcible, within the meaning of the act, which are made without the assent of the person wno, at the time of such entry, has the possession in fact of the premises, and providing a speedy remedy to obtain a restoration of the possession when invaded by force, has an important bearing upon the present controversy in favor of Frame..
I cannot admit that Tribble may rightfully redress himself, by a species of recaption, in defiance of the provisions of all these laws. I do- not concede that Tribble’s entry upon the land, claiming it as his own, did, at that instant, terminate the possession in fact of Frame, and invest Tribble with the actual possession. Where two are using the same land or house, ami there is an apparent joint possession, the law gives the possession in fact'to him wno hath title. Where two are possessed of distinct parts of the land in controversy, claiming under different rights, the party having the better right is, acoord *610 ing to the supreme court in the case of Hunt vs. Wickliffe, II Peters, 212, in constructive possession of all *he land not occupied in fact hr his adversary. And, according to the case of Hord vs. Bodley, V Litt 88, under the same circumstances, the party having the (letter right is in constructive possession of the whole, not excepting that occupied in fact by his adversary. Without deciding which of these rules is correct, it is my opinion, that where the possession in fact is all on one side, a forcible entry upon that possession, although made by the party having the best title, does not. ipso facto, divest the adverse possessor of bis possession in fact, and convert It into the possession in fact of the person making the forcible entry. I regard such an entry as tortious, because It is prohibited by law. And I think no one can by a temporary tortious entry, such as Tribble made, divest the possessor in fact of his possession.
That Tribble’s entry was forcible, and therefore tortious, under the statute of 1810, seems to me to be clear, if we give effect to the obvious meaning of the legislature as expressed in plain, intelligible language. Any entry, with or without multitude of people, against the will of the person possessed of the premises in fact, is declared to be forcible. Here 'ÍYibble entered with his hands, cart, and oxen, and against the. will of Frame; who was, I think, possessed in fact; at least, the evidence which the court were required to instruct the jury to disregard tended io prove such a possession. Tribble was, therefore, guilty of the first wrong. He liad no more right to enter with force upon the land possessed by Frame than if he had been a perfect stranger to the title. This point is settled in the case of Smith &c. vs. Dedman. IV Bibb, 192.
■If, then, Tribble was a tortfeasor, was Frame bound to submit to his forcible conduct, or liad he a right to repel force by force? The law gave Frame a remedy by writ of forcible entry, but was he bound to stand by and let Tribble forcibly remove^ the fences, and then take out his writ ? I think he was not bound to stand by, but that he. might lawfully repel the aggression by force.
*611 In the case of McIlvoy vs. Cockran, II Marshall, 271, it is laid down that the posse-sor of the realty may justify a battery in repelling those who invade the possession by actual force?. Where the entry is made without actual j orce, although it may be construed & force in law, then a request to depart is necessary before the possessor can lawfully lay hands on the person entering and tarn him out. When such request is made and not obeyed, the possessor may seize the invader, and if he resists by violence, and .assaults the possessor, he will be justified in using such force as may be necessary to accomplish the object; and however fatal the consequences, they are to be attributed to the original wrong doer. These doctrines are fully sustained by the case cited; and are, in my opinion, based upon sound reason and morality. They operate to secure the possessions of men, and tend to check the unbridled and wicked passions of those who multiply oppressions and trample upon the law. In this case, it is no ivhere intimated, that if Cockran had the better titl^, that would have authorized him to remove the posts and rails mentioned in Mcllvoy’s plea, and thus subjected Mcllvoy to damages for the assault and battery, without regard to the wounding* charged in the declaration.
In the case of Bobb vs. Bosworth, Litt. Sel. Ca. 81, it is held that no one can lawfully use violence and force in regaining the possession of a slave» 61 It is not material (says the court) whether Bobb or Bosworth had the better right to the negro.”— The same doctrine is maintained in III Blackstone, 4, and III Inst. 134. Recaption must not be “ in a riotous manner or attended with a breach of the peace.” This doctrine is expressly applied by Blackstone, 3 vol. 5, to real property. “ If individuals,” says Blackstone, u were once allowed to use private force as a remedy for private injuries, all social justice must cease, the strong would give law to the weak, and every man would revert to a state of nature.” The doctrine of self-redress, except in defence, and except where it can be done peaceably and without violence, is denounced in every book where4 have seen the subject treated of; and the *612 right to defend our persons, property, and possessions, against the lawless conduct of every illegal assailant, is as clearly maintained.
It may be said that the case of Tribble vs. Frame, in V Litt. 187, justifies the entry made by Tribble, and authorized him to remove the fences. There is no expression in that case, which sanctions the idea, that the holder of the better ütle has a right, either before or after judgment of eviction, to enter upon the possession of the occupant by force, and to the danger of the public peace. If the court, in that case, believed that the jury were authorized to infer from the evidence, that Tribble entered peaceably, and thereby became possessed, they might well, thereafter, look upon Frame as a wrong doer, and justify Tribble upon the principle of self-defence. But if that case intended to establish the doctrine that the ownbr of the better title has a right to enter forcibly upon the occupant, and that the occupant had no right to repel or resist such force, I acknowledge that 1 am unwilling to recognise it asan authority. If that case means that the owner of the better title, by barely going upon the land in a peaceable manner, although it be against the will of the occupant holding adversely, thereby divests the occupant of his actual possession and unites the possession in fact with the title- — I am not prepared to follow it. Where will such a doctrine end? If it prevails, the holder of the better title may cross the fence of the occupant while his growing crop is upon the land, consider the title and possession as united in himself, and then throw down and remove fences, exposing the crop to distraction with impunity. If it prevails, the owner of the better title may slip into the house of the occupant in the disguise of a visiting friend, and being in peaceably, may regard the title and possession as united in himself, and then order the family to depart, and if they refuse, may turn them and throw their property into the street. Such a doctrine can eventuate in nothing short of quarrels, fights, and bloodshed. The statute of 1810 was framed to prevent these mischiefs, and in order to do it effectually, it declared that any entry against the will of the person possessed of the *613 premises in fact, should be deemed forcible; and consequently, under my view of the law, the possessor may resist this force by force. If tlie owner of the better title enters under the disguise of peace and quiet, and thereafter begins to use actual force, by beating the tenant to make him depart, or by throwing his goods out of doors, such conduct displays the quo animo, with which lie sliped in, and therefore, it should relate to the time of his first entry. It was wisely provided in the statute that any entry against the will of the tenant should be a tort. The whole object ofliie' statute will be euiirely defeated, if the doctrine be established that a mere entry remits the proprietor of the better title to all the rights which he had by the common law; for he must be a poor contriver who could not, at some time, find means of entering in an apparently peaceable manner.
It may be insisted, and it was urged in argument, that the opinion which I entertain would subvert the action of ejectment, and take away the right of entry. Not.so. The questions here discussed have not the least bearing to deprive the rightful owner of land of his action of ejectment or of his right of entry. The statute relative to forcible entries, de* daring what shall be a forcible entry, and prohibiting the exercise of the right of entry by force, does not pretend to say, that the right of entry shall not continue to exist.. The right of entry continues, and is.not tolled by declaring that it shall not be forcibly exercised. The right of entry remains, but it is regulated in such manner as is required by the peace and good order of society. The right owner! must appeal to the law, and ask its aid to enforce his \ right of entry, instead of taking justice in his own \ hands as he might have done at common law. If / the tenant consents to the entry on the part of the true owner, by entering, his title becomes complete, by uniting the possession and title. But if the tenant will not consent, the true owner must resort to his action to enforce his right of entry, and not break the peace. Unless, therefore, regulating the right amounts to a distraction of it, the action of ejectment, which depends upon a right of entry, is not *614 destroyed. It might be said, with as much propriety,that regulating commerce, and prescribing the terms upon which foreign goods are to be introduced, utterly destroyed commerce and excluded all foreign-goods. The argument is this, because the right to use force is taken away, the rigid of entry is thereby destroyed. JVbn sequitur.
It may be said, that Frame could not maintain air action of trespass, quare clausum frigit, against Tribble ■for forcibly entering upon the land, and destroying the fences. Admit that Tribble might defend himself in such an action by the plea of liberum tenementum, will that show, that Frame cannot recover in an action of assault and battery, for an injury to Iris person, or in an action upon the case for the injury which his growing crop may sustain in consequence of Tribble’s forcible entry and illegal removal of the fences? ■ Certainly not. The trespass on land, for which the remedy is given by action of trespass, quare clausum frigit, is, according to Blackstone, “ant entry on another man’s ground without a lawful authority, and doing some damage, however inconsiderable, to his real property.” The damages allowed are for the injury the owner sustains in the deterioration of the realty, by the trespass. If the defendant can show that the freehold is his, the loss fails upon him, and no one. else has a right to cotnplain. And if they do, it is but a false clamor, Hence the plea of liberum ienementum is always a good defence to an action of trespass quare clausum frigit. But because the rightful owner cannot be made to pay for damage which lie does to his own estate, does it follow that he can destroy his own estate, pull down fences and houses, and thereby involve the persons and property of his neighbors, without being responsible for the injuries done to them by such conduct? Most clearly not. If aman sets fire to his own house, and thereby consumes mine, I cannot make him pay me the value of his house, but it is well settled that he is bound to pay for mine. There is not a wiser or sounder maxim in the law, than that which requires us to use our own so as noi lo hurt another. In this ease the law prohibited Tribble lrom using his land until he had paid Frame for *615 bis improvements. It likewise prohibited him from entering upon his own land with force, to the disturbance of Frame’s possession. He refused to be governed bv the law and, in violation of its injunctions, he has committed a batterv on Frame, for which I think he ought to be subjected to damages.
If Tribble had, by force, driven Frame from the land, I suppose it will be conceded that Frame, by liis writ of forcible entry and detainer, could have recovered the possession again. Imagine such a case, and after possession is restored, Tribble again drives him, by force, and so on as often as the possession is regained, must Frame submit to such repetitions of violence? His recovery of possession is a mockery, if it does no more than place him in a Situation to invite a new attack. Mv idea is, that he may resist expulsion by force, provided he be a Iona fide possessor. But I would not extendió him such right of resistance in case he was a fraudulent possessor. In this respect, I coincide with the opinions expressed by Judge Mills, in his dissent delivered in the case of Chiles &c. vs. Stephens. To illustrate my meaning by putting a case. If aman, having been two years in possession, close his doors and leave home for a day, and find a disseizor in possession upon his return, and he enter upon the disseizor and put him out by force, I would not apply the provisions of the act relative to forcible entries and detainers, in favor of the disseizor. I would discountenance him on account of his fraud, and for the same reason I would deny to him the right of defending a possession which he had acquired in violation of law, and to which the law did not extend protection, by exempting the possessor from the re- 1 medy by forcible entry and detainer. All my ideas on the subject are based upon a deep conviction of the impropriety and unlawfulness of permitting a man to acquire a right which the law will respect and sanction, while he is acting in violation of what the law requires of him. Here the law denounces Tribble’s entry upon the'land by force. He does enter with force, and by that act is made to acquire a-right, to inflict a personal, injury upon Frame, if *616 he will not abandon a possession which the laws secure to him.
It is my opinion that the judgment should, be af; firmed, with costs and damages.